IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| JOHN M. LODDERHOSE | : | BANKRUPTCY NO.: 5-04-bk-51413 |
|     DEBTOR | : | |
| JOHN M. LODDERHOSE | : | {**Nature of Proceeding**: 1st Amended |
|     PLAINTIFF | : | Complaint to Avoid Municipal Liens on |
|     v. | : | Residential Real Estate, etc. (Doc. #9)} |
| GREATER HAZELTON JOINT SEWER | : | |
| AUTHORITY & CHARLES J. DeHART, | : | |
| CHAPTER 13 TRUSTEE | : | |
|     DEFENDANTS | : | **ADVERSARY NO.: 5-04-ap-50208** |

---

| | | |
|---|---|---|
| JOHN M. LODDERHOSE | : | {**Nature of Proceeding**: 1st Amended |
|     PLAINTIFF | : | Complaint to Avoid Municipal Liens on |
|     v. | : | Residential Real Estate, etc. (Doc. #11)} |
| BOROUGH OF WEST HAZELTON, | : | |
| MALONE AGENCY & CHARLES J. | : | |
| DeHART, CHAPTER 13 TRUSTEE | : | |
|     DEFENDANTS | : | **ADVERSARY NO.: 5-04-ap-50212** |

*******************************************************************************

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| GEORGE S. ZATORSKY | : | BANKRUPTCY NO.: 5-03-bk-55767 |
| CAROL ANN ZATORSKY | : | |
|     DEBTORS | : | |
| GEORGE S. ZATORSKY | : | {**Nature of Proceeding**: 1st Amended |
| CAROL ANN ZATORSKY | : | Complaint to Avoid Municipal Liens on |
|     PLAINTIFFS | : | Residential Real Estate, etc. (Doc. #10)} |
|     v. | : | |
| BOROUGH OF WEST HAZELTON & | : | |
| CHARLES J. DeHART, CHAPTER 13 | : | |
| TRUSTEE | : | |
|     DEFENDANTS | : | **ADVERSARY NO.: 5-04-ap-50205** |

## OPINION

Before the Court are three separate adversary proceedings concerning the avoidance of municipal liens placed against the Debtors' respective properties and a request for declaratory judgments regarding an alleged automatic stay violation and attorney's fees pursuant to § 1983 of Title 43 of the United States Code.

In lieu of a trial, the parties requested this Court resolve the matters based on a joint stipulation of facts and briefs supporting their individual positions. The matter was thereafter taken under advisement.

## JURISDICTION

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (K) and this Court has jurisdiction to render this decision under 28 U.S.C. §§ 1334, 157 and Middle District of Pennsylvania Standing Order Misc. 84-0203.

## STATEMENT OF FACTS

### John M. Lodderhose

John M. Lodderhose filed a petition under Chapter 13 of Title 11 of the United States Code on March 23, 2004. Mr. Lodderhose is listed with the Luzerne County Recorder of Deeds office as the owner of record of the property commonly used as his residence.

At the time of his bankruptcy filing, Mr. Lodderhose was indebted in the amount of $198 for pre-petition sewage fees to the Greater Hazelton Joint Sewer Authority. The Greater Hazelton Joint Sewer Authority is a municipal entity and sewer treatment facility that operates on behalf of the City of Hazelton/West Hazelton.

Mr. Lodderhose also owes a financial obligation to another municipal entity, the Borough of West Hazelton, for garbage disposal fees incurred within the last three years. As of his filing date, Mr. Lodderhose owed $664.69 on this obligation.

Neither the Greater Hazelton Joint Sewer Authority nor the Borough of West Hazelton filed a notice of a municipal lien with the Prothonotary of Luzerne County.

### Carol Ann & George Zatorsky

Carol Ann and George Zatorsky filed a petition under Chapter 13 of Title 11 of the United States Code on March 23, 2004. The Zatorskys are the record owners of property located

in the City of West Hazelton, which is commonly known as their place of residence. Their interest in this property is duly recorded in the Luzerne County Recorder of Deeds office.

As of their petition date, the Zatorskys were indebted to the Borough of West Hazelton for $1,488.39 in garbage collection fees, $601.66 in sewer fees, and $187.50 for curbing. The debt associated with their garbage collection was incurred within the last three years.

The Borough has not filed a notice of municipal lien with the Prothonotary of Luzerne County.

## DISCUSSION

Section 7106 of Title 53 of Pennsylvania Statutes provides, in part:

> All municipal claims, municipal liens, taxes, tax claims and tax liens which may hereafter be lawfully imposed or assessed on any property in this Commonwealth, and all such claims heretofore lawfully imposed or assessed within six months before the passage of this act and not yet liened, in the manner and to the extent hereinafter set forth, shall be and they are hereby declared to be a lien on said property . . .; and municipal claims and municipal liens shall arise when lawfully imposed and assessed and shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate with which the said property may become charged, or for which it may become liable . . . .

53 P.S. § 7106(a).

What is at issue is whether these liens were perfected.

Through use of § 522(h)[1] of the Bankruptcy Code ("Code"), the Plaintiffs are attempting to use a trustee's powers under §§ 544 and 545 of the Code in order to avoid these municipal liens. The pertinent sections provide:

> (a) The trustee shall have, as of the commencement of the case, and without regard

---

[1] Section 522(h) states:
(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if–
    (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
    (2) the trustee does not attempt to avoid such transfer.
11 U.S.C. § 522(h)

> to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3)

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> . . .
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists;

11 U.S.C. § 545(2)

The Plaintiffs argue that since no lien was recorded in any Luzerne County office by the Defendants prior to the filing date of their respective bankruptcy petitions, the liens were not perfected "vis-à-vis" a hypothetical purchaser on the filing dates and are therefore avoidable. In contrast, the Defendants rely on this Court's holding in In re Berwick Assoc., Ltd., 178 B.R. 65 (Bankr. M.D. Pa. 1994), to support their argument that a lien is created and perfected when the municipal claim is assessed.

In Berwick Assoc., Ltd., this Court was asked to determine whether the filing of a tax lien assessed pursuant to 53 P.S. § 7102 is required to effect a perfection of the lien interest and defeat the interests of others, including a bona fide purchaser for value (or the trustee). See id. at 66-67. Without the aid of relevant Pennsylvania caselaw, this Court held that "a lien is created (and by definition perfected) when the tax is assessed in conformity with § 7102." See id. at 67.

However, since this Court's decision in Berwick Assoc., Ltd., Pennsylvania's Supreme Court has addressed (albeit in passing) the question of when a tax lien is perfected. In Pentlong Corp. v. GLS Capital, Inc., 820 A.2d 1240 (Pa. 2003), the court stated:

> Ordinarily, when a tax is levied on a property, a lien automatically attaches to the

> property, without any County action. See King v. Mt. Vernon Bldg. Ass'n, 106 Pa. 165 (1884). In order to perfect the tax lien, however, the County must file a tax claim with the Prothonotary on or before the last calendar day of the third calendar year in which the tax became due and payable. 53 P.S. § 7143.

Pentlong, 820 A.2d at 1243 n.1.

Although Pentlong Corp. primarily dealt with issues surrounding "tax claims", and not "municipal claims", this Court finds it to be dispositive in the present matters.

> Section 7143 provides, in relevant part:
>
> Claims for taxes, water rents or rates, lighting rates, power rates, and sewer rates, must be filed in the court of common pleas of the county in which the property is situated unless the property is situate in the City of Philadelphia . . . All such claims shall be filed on or before the last day of the third calendar year after that in which the taxes or rates are first payable, except that in cities and school districts of the first class claims for taxes and other municipal claims, which have heretofore become liens pursuant to the provisions of this act or which have been entered of record as liens or which have been liened and revived, shall continue and remain as liens for the period of twenty years from such revival, entry or lien by operation of law, whichever shall have last occurred; and other municipal claims must be filed in said court of common pleas or the Municipal Court of Philadelphia within six months from the time the work was done in front of the particular property . . . .

53 P.S. § 7143.

By definition only, a municipal claim is defined as "a claim arising out of or resulting from a tax assessed by a municipality to recover for a taxpayer's benefits from local improvements, services supplied, work done, or improvements authorized and undertaken by the municipality, although the assessment amount is not definitely ascertained at the time of the claim and a lien has not yet been filed." See Pentlong, 820 A.2d at 1253; 53 P.S. § 7101. As such, a municipal claim is a type of assessed tax. Pennsylvania's legislature defines "taxes" as "any county, city, borough, incorporated town, township, school, bridge, road or poor taxes, together with and including all penalties, interest, cost, charges, expenses and fees . . . ." See 53 P.S. § 7101. In accordance with the Pennsylvania Supreme Court's interpretation of when a tax lien is perfected under 53 P.S. § 7143, it stands to reason that the perfection of a lien arising from a "municipal claim" is equally subject to the court's conclusion that a tax lien is perfected under 53 P.S. § 7143 by

filing. Accord Wilson v. Armstrong County Sch. Dist. (In re Wilson), 25 B.R. 61, 62 (Bankr. W.D. 1982).

Based upon the nearly identical facts with regard to each Plaintiff's individual case, it is evident that the respective municipalities held liens against the Plaintiffs' properties for a number of services provided to each property as of the filing date of their bankruptcy petitions. As it stands, the Defendants' liens against the Plaintiffs' properties were not perfected as of their respective filing dates. Plaintiffs may therefore assume the role usually reserved for a trustee and avoid the liens at issue under §§ 544 and 545 of the Code.

However, the Plaintiffs' ability to avoid these liens is tempered by § 546(b). Section 546(b) states in relevant part:

> (b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to *any generally applicable law* that—
> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection;

11 U.S.C.A. § 546(b)(1)(A)(emphasis added).

The Third Circuit has previously concluded that a creditor must possess a pre-petition interest in the property and a post-petition perfection of this interest must relate back, as a matter of law, to the date of its creation. See Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp., 884 F.2d 80, 85 (3d Cir. 1989); see also Makoroff v. City of Lockport, 916 F.2d 890, 893-94 (3d Cir. 1990). A taxing authority does not have an interest in this property until it takes "the affirmative acts necessary to fix the amount of the tax due and to acquire a lien to the extent of that amount." See Makoroff, 916 F.2d at 894.

When this reasoning is applied to the facts at hand, "any generally applicable law" forestalls the Plaintiffs' attempts at avoidance. Under Pennsylvania law, municipal Defendants have three years from the last date of the calendar year in which the obligation was first payable to perfect their liens. See 53 P.S. § 7143; accord Wilson, 25 B.R. at 62. Despite the sparse set of

facts presented to the Court, both parties acknowledge that these obligations were incurred within three years of the bankruptcy filings. As such, Plaintiffs may not presently avoid the liens in question.

In addition to the avoidance actions, Plaintiffs also seek the entry of a number of declaratory judgments as they pertain to questions of dischargeability, a possible violation of the automatic stay for actions which have yet to occur, and whether attorney's fees may be imposed as they may relate to this violation.

Under the Federal Declaratory Judgment Act, any court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" in a case of actual controversy within its jurisdiction upon the filing of an appropriate pleading. See 28 U.S.C. § 2201(a). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." Id. Because the Declaratory Judgement Act is remedial in nature, courts should interpret it liberally. See Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Amer., 257 F.2d 485, 489 (1958).

In Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461 (1937), the Supreme Court held that:

> A 'controversy' in this sense must be one that is appropriate for judicial determination. Osborn v. Bank of United States, 9 Wheat. 738, 819, 6 L.Ed. 204. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. United States v. Alaska S.S. Co., 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. (citations omitted). It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. (citations omitted).

See Aetna Life, 300 U.S. at 240-41.

However, a court's ability to enter declaratory judgments must be tempered against the limitation

the United States Constitution imposes on the issuance of advisory opinions. See Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1153 (3d Cir. 1995). Pursuant to Article III, Section 2 of the Constitution, federal jurisdiction is limited to actual cases and controversies. See U.S. Const. Art III, § 2. "This constitutional provision 'stands as a direct prohibition on the issuance of advisory opinions.' (citation omitted). The existence of a 'case of controversy' is a condition precedent to the proper exercise of judicial power by a federal court and the Declaratory Judgement Act can not relax that constitutional requirement." See Travelers Ins. Co., 72 F.3d at 1153. With regard to this issue, our Third Circuit Court noted in Simmonds Aerocessories, Ltd., that:

> In Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, the Supreme Court pointed out that "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Thus the fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination.*

Simmonds Aerocessories, Ltd, 257 F.2d at 489 (emphasis added).

Bearing these principles in mind, this Court views Plaintiffs' declaratory judgment actions as requests for an opinion advising them on what this Court's ruling would be if a particular set of hypothetical facts occurred at some point in the future. There is no present controversy between the parties, merely the possibility that one *may* arise at some point in the future. The Court has not been presented with any evidence that would establish a present conflict of legal interests between the parties. There is nothing to suggest that the Defendants will engage in some form of conduct which *may* be a violation of the automatic stay.

Furthermore, questions concerning the dischargeability of the debts at issue are not ripe

for disposition.  See Commonwealth of Pennsylvania Dep't of Pub. Welfare v. Johnson-Allen (In re Johnson-Allen), 871 F.2d 421, 423 (3d Cir. 1989).  This issue only becomes ripe once a confirmed plan has been concluded and a discharge order has been entered.  See id.  Plaintiffs' declaratory judgment actions are therefore denied.

An Order will follow.

Date:   September 23, 2005

*John J. Thomas, Bankruptcy Judge*
(CMS)

*This electronic opinion is signed and filed on the same date.*